IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:

BUILDERS GROUP & DEVELOPMENT CORP.

Debtor

CASE NO. 13- 04867 (ESL)

CHAPTER 11

OPINION AND ORDER

This case is before the court upon CPG/GS PR NPL, LLC's (hereinafter referred to as "CPG" or "Creditor") *Motion for Relief from the Automatic Stay* filed on October 25, 2013 (Docket No. 111). On November 12, 2013, Builders Group & Development Corp. (hereinafter referred to as "Debtor" or "Builders Group") filed its *Opposition to Motion for Relief from the Automatic Stay* (Docket No. 125). On November 18, 2013, the court held an evidentiary hearing regarding the *Motion for Relief from the Automatic Stay* (the "Hearing"). On November 20, 2013, CPG filed the *Secured Creditor's Proposed Findings of Fact and Conclusions of Law on Motion for Relief from Stay* (Docket No. 139). On November 20, 2013, Builders Group filed its *Proposed Findings and Conclusions* (Docket No. 140). For the reasons stated herein, CPG's *Motion for Relief from the Automatic Stay* is hereby granted pursuant to 11 U.S.C. §362(d)(1) and (d)(2).

Jurisdiction

The Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b) and 157(a). This is a core proceeding pursuant to 28 U.S.C. §§157(b)(2)(G). Venue of this proceeding is proper under 28 U.S.C. §§1408 and 1409.

-1-

**<u>Findings of Fact</u>**

In accordance with the evidence admitted, testimony presented and the arguments of counsel for the interested parties, the court makes the following Findings of Fact.

1. Prior to the petition date, Builders Group entered into various loan agreements with FirstBank (CPG is the successor creditor), pursuant to which FirstBank as the pre-decessor creditor provided certain credit facilities to the Debtor.

2. The loans are secured by, among other things, certain real property that is described in detail in the mortgage deeds. The real estate collateral is the Cupey Professional Mall.

3. The Debtor generates rental income from the Shopping Center, which was pledged to CPG.

4. As part of the loan documents and collateral for the loans, on May 18, 2004, the Debtor granted CPG a pre-petition "Collateral Assignment of Lease Agreements and Rents," as attested through an affidavit issued by a Notary Public, which provided a lien in favor of CPG over the rents generated by the Cupey Professional Mall.

5. Prior to the petition date, Debtor defaulted on its obligations under the loan documents, which defaults were duly notified to the Debtor.

6. The Debtor admitted to these defaults by and through the Forbearance Agreement executed on August 24, 2010, which was attested through an affidavit before a Notary Public.

7. As a result of the defaults, on August 16, 2011, CPG commenced a civil action for foreclosure of mortgages and collection of money in the Puerto Rico Court of First Instance, San Juan Section, Civil Case No. K CD2011-1828.

8. Prior to the petition date, CPG obtained Judgment in its favor in the state court case. The Judgment was upheld in the Puerto Rico Court of Appeals as well as the Supreme Court of Puerto Rico.

9. Builders Group filed a bankruptcy petition under Chapter 11 of the Bankruptcy Code on June 12, 2013.

10. Builders Group included CPG in its Schedule D-Creditors Holding Secured Claims- as a secured creditor of two (2) mortgage loans from 08/10/2011, which amount to $9,400,000.00. The Debtor listed the value of the property subject to the mortgage lien in the amount of $11,900,000.

11. CPG filed a proof of claim on August 26, 2013, in the amount of $23,057,297.28 including its secured portion of $8,731,063.00 (the remaining $14,326,34.28 are listed as unsecured).

12. On October 23, 2013, this court rendered an Opinion and Order (Docket No. 108) holding that the rents generated by the mall constitute property of the estate under state law and that the same constitute cash collateral to CPG's debt. The court also found that the Debtor did not provide adequate protection to CPG for its two (2) separate interests; namely, its mortgage on the real property and its security interest in the post-petition rents. Thus, the court held that Debtor may not use CPG's cash collateral (the post-petition rents).

13. Wendy's is one of the tenants of the mall. Mr. Franco González is Vice President of development and Real Estate for Wendco and is in charge for the Wendy's located at the mall.

14. Mr. González's last visit to the mall was on November 17, 2013 and he stated that the condition of the mall has become much more adverse since August 5, 2013. See Exhibit 1 (Docket No. 66-2, pgs. 7-9).

15. The adverse conditions of the mall affect the business because it is not appealing to the customers because the mall is a safety hazard and a complete eye sore pursuant to Mr. González's testimony.

16. Mr. González stated that Wendy's would not be willing to pay a renewal fee if Mr. Jorge Rios Pulpeiro remains in charge of the mall's administration. Mr. González has dealt with more than 10 mall administrators in the last 5 years in more than 10 locations and opines that Mr. Jorge Rios' ability to manage the mall is not to par.

17. Mr. González stated that he would like for Wendy's to stay in the mall and refurbish the store to Wendy's standard.

18. Mr. Héctor del Rio is the asset manager of the loans which are secured by the Cupey Professional Mall and manages the accounts and everything related to these loans.

19. Mr. del Rio testified that CPG's proof of claim #11 (Exhibit 4) reflects the application of payments as shown on the Loan Application Payment Detail (Exhibit 5). The payments to the loan have been applied to the principal balance since the state court Judgment in the year 2011.

20. The Center for the Collection of Municipal Taxes ("CRIM") filed proof of claim #14-1 on August 29, 2013 in the amount of $1,610,156.84 of which $1,472,952.89 is listed as a secured claim. See Exhibit 6.

21. A CRIM statement of account balance as of October 31, 2013 reflects that the balance due for the property taxes has increased because the first semester property taxes for the year 2014 have not been paid. See Exhibit 7.

22. Mr. del Rio stated that CPG is adversely affected by CRIM's increasing claim balance because CRIM is a secured creditor that gets paid before CPG's secured claim, thus reducing CPG's interest in the property.

23. CPG has insured the mall with commercial property insurance (Exhibit 17) and liability insurance (Exhibit 18). CPG paid for both insurance policies approximately $60,000 per year pursuant to Mr. del Rio's testimony.

24. The liability insurance has property coverage in the amount of $4,052,705 (Exhibit 18).

25. The tenants of the mall have been increasingly worrying for a long time due to the deteriorating condition of the mall pursuant to Mr. Del Rio's testimony.

26. The necessary improvements to the mall include the following: roof treatment, repaving of all the parking areas, repaint the mall inside and outside, and exterminating services need to be performed.

27. Mr. del Rio is concerned about Mr. Jorge Rios Pulpeiro's ability to manage the mall because many years prior to the Debtor's filing of the bankruptcy petition, the mall lacked proper maintenance and necessary improvements.

28. The Debtor has not paid employment taxes and this directly affects the property because it becomes a lien on the property. See Exhibit 10 (Tax Lien Certificate). Failure to pay property taxes to the CRIM and federal taxes is indicative of poor management pursuant to Mr. del Rio's testimony.

29. Mr. del Rio stated that if relief from the automatic stay is granted, CPG has property managers, such as Las Brisas Property Management, to administer the mall. CPG would bear the costs of Las Brisas Property Management until the court orders for Las Brisas Property Management to be paid from assets of the estate.

30. The Forbearance Agreement provides that the Borrower is solely responsible for the payment of insurance and property taxes (See Exhibit 13, Forbearance Agreement, Docket No. 35-2). FirstBank had in place an escrow account in the amount of $205,000.00 to cover property taxes. The funds in the escrow account were provided by another entity named La Trinidad Elderly. The monies in the escrow account may be applied to the principal of the loan. The monies in the escrow account have remained untouched by CPG. No other escrow accounts were inherited from FirstBank. Testimony from Mr. del Rio.

31. CPG has received pre-petition monthly rent payments on average in the amount of $35,000 to $40,000.

32. The fair market value of the mall as of November 14, 2013 is $6.6 million pursuant to Appraiser Mr. Rafael Bonnin Surís. This figure was derived from two indicators; (1) the comparable sales approach which indicated a value of $7.2 million; and (2) the income capitalization approach based on the actual revenue stream of the property and projecting the future occupancy of the property which indicated a value of $6 million. The midpoint of these two (2) indicative values was used to determine the value of the property in the amount of $6.6 million. Testimony of Appraiser Rafael Bonnin Surís.

33. Mr. Bonnin stated that disgruntled tenants may result in a negative impact on the property value because those tenants may leave and lead to increase vacancies and less cash flow due to fixed operating expenses.

34. Mr. Jorge Rios Pulpeiro bought the commercial property (the mall) in 1999 for $2.9 million. There are four (4) employees that currently work in the mall; namely: 2 janitors, 1 handyman and an accountant. The Debtor has contracted the following services for the upkeep of the mall: security, maintenance, exterminating services and garbage disposal.

35. Mr. Rios Pulpeiro testified that the Debtor has 27 leases of which 22 are paying the rent. CPG currently collects rent from the tenant Amigo (in the amount of $18,500) and Wendy's (in the amount of $3,000). Wendy's has paid two (2) overage checks each in the amount of $69,000 for the years 2011 and 2012.

36. The state court Judgment provides a breakdown of the different amounts the co-defendants are responsible for paying to CPG. The co-defendants in the state court case are: Builders Group, 1959 Building Center, Inc., Miramar Plaza Realty, Inc. and Mr. Jorge Rios Pulpeiro. The Judgment provides that the co-defendants need to pay the following: $9,637,180.95 for the principal of the loan, $21,002.40 for interest, $1,100,000 for attorney's fees and costs, $787,458 for the principal of another loan, $1,719 for interest and $100,000 for attorney's fees and costs. The total of the different allocations

-6-

for these two (2) loans amount to $11,647,361.70 (Exhibit 12, Docket No. 35-7, pgs. 1-10).

37. During the last seven (7) months, the Debtor has collected less than $10,000 from accounts receivables owed by affiliated corporations. The September 2013 monthly operating report reflects a balance of $2,100,300.68 from accounts receivables from affiliates (Exhibit 16).

38. CPA José Monge Robertín testified that the July 2013 Monthly Operating Report needs to be amended because it did not include the information of the deposits made by CPG to the court. The Debtor since the beginning of the case has not received information regarding the details of the payments received by CPG's collections office.

39. CPA José Monge testified that many of the lease contracts have lapsed and thus, is not clear of the existing (current) leases.

40. CPA Monge testified that the collections received directly by the Debtor for the following three (3) months were the following: (i) July 2013- $21,542, (ii) August 2013- $40,622; and (iii) September 2013- $48,811. CPG consigned with the court the following funds: (i) during the month of July 2013- $46,700; and (ii) August 2013- $19,682. No deposits have been made by CPG for the month of September 2013. CPG should have at least deposited for 2 tenants approximately $21,000 for September 2013.

41. The total funds as of September 30, 2013 in the Debtor's account and monies consigned in the court total $157,980. However, $72,000 of the $157,980 is a non-recurring item from one of the tenants (Cupey Bowling & Entertainment Corp.).

42. CPA Monge testified that the monthly adequate protection payment for the real estate property should be approximately $17,775. This figure was obtained using the fair market value of $6.6 million for the real property and an interest rate of 3.05%. If a 4.25% interest rate is utilized, then the monthly adequate protection payment would be $23,375

-7-

for the real estate collateral. CPA Monge informed the court that the Debtor would provide a bond for the adequate protection pertaining to the rents.

43. CPA Monge stated that 23% of the leasing space (leasable area) is currently not occupied.

44. CPA Monge testified that he is missing the specific detail of the particular months that each tenant has paid in order to reconcile the ledger for each tenant.

## Applicable Law and Analysis

The automatic stay provisions of 11 U.S.C. §362(a) are fundamental to allow a Chapter 11 debtor a reasonable attempt to reorganize. The automatic stay acts as an injunction to protect the property of the estate and becomes operative by the mere filing of a bankruptcy petition. In re Soares, 107 F. 3d 969, 971 (1st Cir. 1997). Hence, the "automatic" reference in the statutory provision and its effect. The broad scope and strength of the automatic stay in favor of the debtor is balanced by the rights afforded to the creditors in 11 U.S.C. §362(d)- (g). A party seeking relief from the automatic stay must file a motion under §362(d) and Fed. R. Bankr. P. 4001.

Section 362(d)(1) allows relief from the automatic stay based upon the following; "for cause, including the lack of adequate protection of an interest in property of such party in interest." 11 U.S.C. §362(d)(1). The Bankruptcy Code does not define the term "adequate protection," but Section 361 provides examples of what might constitute adequate protection; namely (i) periodic cash payments equivalent to decrease in value; (ii) an additional or replacement lien on other property; or (3) other relief that provides for the indubitable equivalent. See Alan N. Resnick & Henry J. Sommer, 3 Collier on Bankruptcy ¶362.07[3][b] (16th ed. 2013).

In the instant case, the Debtor, during the Hearing, offered monthly adequate protection payments of $17,775 for the real estate property. The figure of $17,775 was calculated by using $6.6 million as the fair market value of the property and 3.05% as the interest rate. The court notes that the monthly adequate protection payment results in $16,775 not $17,775. However, the Debtor vaguely addressed the adequate protection for the use of the rents (CPG's cash collateral) by stating that it would post a bond. Mr. Jorge Rios Pulpeiro stated that the funds for the bond would originate from private investors in Miami. The court finds that the Debtor did not offer adequate protection at the Hearing for the post-petition rents since Builders Group did not provide a monthly payment amount or a concrete amount for CPG's interest in the rents.

At this juncture, the court finds that the Debtor has not provided adequate protection for CPG's security interest in the post-petition rents which must be determined in their own right. The court has been placed almost in the same position as for the determination of whether Builders Group was providing adequate protection for the use of the real property and the post-petition rents. The only difference being the Debtor's promise to post a bond that would be funded from some unnamed private investors in Miami. However, no written document or additional information was provided to the court regarding the bond.

The court notes that on November 22, 2013, Builders Group, subsequent to the Hearing, filed a *Motion to Consign Funds for Provision of Adequate Protection* (Docket No. 142) by which it consigned with the court a check in the amount of $233,750.00 to provide adequate protection to CPG over a period of ten (10) months resulting in a monthly payment of $23,375. Builders Group detailed in its *Proposed Findings and Conclusions* (Docket No. 140) that this monthly adequate protection is for both the adequate protection for the real estate collateral with a value of $6.6 million and an interest rate of 3.05% which results in a monthly payment of

$16,775 and $6,600.00 for the monthly adequate protection payment for the use of the post-petition rents.

A secured creditor may file a motion for relief from stay against property of the estate on the ground that the debtor has no equity in the property and that the property is not necessary for an effective reorganization. 11 U.S.C. §362(d)(2). The party seeking relief has the burden of proving that the debtor has no equity in the property, and the party opposing the relief, generally the debtor, has the burden on all other issue. 11 U.S.C. §362)(g). See In re MJS Las Croabas Props., 2013 Bankr. Lexis 2256, *9-10 (Bankr. D.P.R. 2013).

In the instant case, Builders Group as part of its Proposed Conclusions of Law stated that it "lacks equity in the Cupey Mall" (Docket No. 140, pg. 9). Moreover, at the Hearing Builders Group did not provide an appraisal report of the Cupey Professional Mall to rebut CPG's position that the fair market value of the mall as of November 14, 2013 is $6.6 million. Builders Group included CPG in its Schedule D-Creditors Holding Secured Claims- as a secured creditor of two (2) mortgage loans from 08/10/2011, which amount to $9,400,000.00. The Debtor listed the value of the property subject to the mortgage lien in the amount of $11,900,000. The Debtor did not provide any evidence at the hearing to support the listed value of the commercial property. However, taking into account the fair market value of the property for $6.6 million, the stipulated value by the parties for the cash collateral hearing in the amount of $8,731,063 (which is the amount listed as secured by CPG in its proof of claim #11-1), and the CRIM's secured claim in the amount of $1,472,952 there is clearly no equity in the property. Moreover, the Debtor conceded in its proposed conclusions of law that the Cupey Mall lacks equity. Thus, the court finds that it is undisputed that the there is no equity in the property. Thus, the burden has shifted to the Debtor to demonstrate that the property is necessary to an effective reorganization.

-10-

This court in <u>In re MJS Las Croabas Props.</u>, stated the following regarding the debtor's burden to prove a "reasonable possibility of a successful reorganization within a reasonable time":

> "Pursuant to 11 U.S.C. §362(g)(2), Debtor has the burden of proof on all issues besides lack of equity in regards to relief from the automatic stay under 11 U.S.C. §362(d)(2). In particular, Debtor has the burden to prove a "reasonable possibility of a successful reorganization within a reasonable time." <u>In re Anderson</u>, 913 F. 2d 530, 531 (8th Cir. 1990). Debtor's Property is not necessary to an effective reorganization unless Debtor proves a "reasonable possibility of a successful reorganization within a reasonable time." <u>United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.,</u> 484 U.S. 365, 375-76, 108 S. Ct. 626, 98 L. Ed. 2d 740 (1988).  As stated by the Eleventh Circuit, "[f]or property to be 'necessary to an effective reorganization' of the debtor . . . it must be demonstrated that an effective reorganization is realistically possible; the mere **[\*13]** fact that the property is indispensable to the debtor's survival is insufficient." <u>In re Albany Partners, Ltd.</u> 749 F. 2d 670, 673, n. 7 (Bankr. 11th Cir. 1984).  (Bankruptcy was dismissed and automatic stay annulled where court found it unlikely that Debtor operator of a hotel could implement an effective Chapter 11 reorganization.); <u>In re Snapwoods Apartments of Dekalb County, Ltd.,</u> 153 B.R. 524, 526 (Bankr. D. Ohio 1993) (Automatic stay lifted as to secured creditor where Debtor could not demonstrate that successful reorganization was likely as the Debtor's past and current net operating income of apartment complex was considerably less than their projected amount.); <u>In re Canal Place Ltd., Partnership</u>, 921 F. 2d 569, 577 (Bankr. La. 1991) (Automatic stay lifted where Debtor's entire plan was based on avoiding foreclosure while awaiting more favorable economic conditions.); <u>In re Bloomington Investors, Limited Partnership,</u> 114 B.R. 174 (D. Minn. 1990) (Stay lifted where hotel was worth approximately $6,000,000 less than amount of secured claim and Debtor did not meet its burden of effectuating successful reorganization)." <u>In re MJS Las Croabas Props.</u>, 2013 Bankr. Lexis 2256, \*12-13 (Bankr. D.P.R. 2013).

The court finds that the Debtor has not satisfied its burden of proving that it has a "reasonable possibility of a successful reorganization within a reasonable time." At this juncture, the court finds that the Debtor's monthly rental income is difficult to determine due to various factors: (i) non-recurring items such as payment of $72,000.00 from a tenant (Cupey Bowling); (ii) many of the lease contracts have lapsed and there is no record of the existing current leases that have a valid lease contract (agreement); (iii) Mr. Rios Pulpeiro testified that there are 27

-11-

leases of which 22 are currently paying the rent and that these 22 leases generate monthly $78,000- $80,000; (iv) Mr. del Rio testified that CPG has received pre-petition monthly rent payments on average in the amount of $35,000 to $40,000; and (v) the total funds as of September 30, 2013 in the Debtor's account and monies consigned in the court total $157,980 including the $72,000 non-recurring item. The court finds that the Debtor does not generate sufficient rental income from the mall to be able to pay its monthly operating expenses, the adequate protection payments, and fund the necessary improvements to the mall in order to increase the occupancy rate of the mall and generate more income. Moreover, the Debtor was expecting the $400,000 renewal fee from Wendy's to fund the mall's maintenance and necessary improvements but pursuant to Mr. Franco Gonzalez's testimony, Wendy's will not pay the renewal fee if Mr. Rios Pulpeiro remains administering the mall. Lastly, the Debtor did not submit or propose a sketch of a reorganization plan to demonstrate that reorganization is realistically possible.

### Conclusion

The court, based on the Findings of Fact and conclusions of law stated herein, hereby grants CPG's *Motion for Relief from the Automatic Stay* pursuant to 11 U.S.C. §362(d)(1) and (d)(2).

SO ORDERED.

In San Juan, Puerto Rico, this 27th day of November, 2013.

Enrique S. Lamoutte
United States Bankruptcy Judge

-12-